1

2

3

4

5

6

7

8                         IN THE UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10    SUSAN COLBERT,

11                 Plaintiff,                     No. CIV S-11-0199 DAD

12          vs.

13    MICHAEL J. ASTRUE,                          ORDER
      Commissioner of Social Security,
14
                 Defendant.
15    _____/

16          This social security action was submitted to the court without oral argument for

17    ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary

18    judgment.  For the reasons explained below, plaintiff's motion is granted, the decision of the

19    Commissioner of Social Security (the Commissioner) is reversed, and the matter is remanded for

20    further proceedings consistent with this order.

21                              **PROCEDURAL BACKGROUND**

22          On February 5, 2008, plaintiff filed an application for Disability Insurance

23    Benefits (DIB) under Title II of the Social Security Act (the Act) and for Supplemental Security

24    Income (SSI) under Title XVI of the Act, alleging disability beginning on October 31, 2000.

25    (Transcript (Tr.) at 116-17.)  Plaintiff's alleged onset date was later amended to September 1,

26    2006.  Plaintiff's applications were denied initially on September 29, 2008, and upon

1

reconsideration on January 29, 2009.  (Id. at 37, 31.)

Plaintiff requested a hearing before an Administrative Law Judge (ALJ), and a hearing was held before an ALJ on January 11, 2010.  (Id. at 448-97.)  Plaintiff was represented by counsel and testified at the administrative hearing.  In a decision issued on April 16, 2010, the ALJ found that plaintiff was not disabled.  (Id. at 15-24.)  The ALJ entered the following findings:

> 1.  Ms. Colbert meets the insured status requirements of the Social Security Act through June 30, 2012.
>
> 2.  Ms. Colbert has not engaged in substantial gainful activity since the amended on-set date of September 1, 2006, the alleged onset date (20 CFR 404.1520(b), 404.1571 et seq., and 416.971 et seq.).
>
> 3.  Ms. Colbert has the following severe impairments: status post cervical cancer, bilateral heel spurs, and obesity (20 CFR 404.1520(c) and 416.920(c)).
>
> 4.  Ms. Colbert does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5.  After careful consideration of the entire record, the court finds that Ms. Colbert has the residual functional capacity to perform a modified range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) except have a sit/stand option and occasionally perform postural activities.
>
> 6.  Ms. Colbert is capable of performing past relevant work as a grocery courtesy clerk and fitness/circuit trainer.  This work does not require the performance of work related activities precluded by Ms. Colbert's residual functional capacity (20 CFR 404.1565 and 416.965).
>
> 7.  Ms. Colbert has not been under a disability, as defined in the Social Security Act, from September 1, 2006, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Id. at 17-24.)

On November 23, 2010, the Appeals Council denied plaintiff's request for review of the ALJ's April 16, 2010 decision.  (Id. at 2-5.)  Plaintiff sought judicial review pursuant to 42

1   U.S.C. § 405(g) by filing the complaint in this action on January 21, 2011.

2                          **LEGAL STANDARD**

3              The Commissioner's decision that a claimant is not disabled will be upheld if the

4   findings of fact are supported by substantial evidence in the record as a whole and the proper

5   legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973

6   (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

7   The findings of the Commissioner as to any fact, if supported by substantial evidence, are

8   conclusive.  Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such

9   relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

10  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones

11  v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401

12  (1971)).

13             A reviewing court must consider the record as a whole, weighing both the

14  evidence that supports and the evidence that detracts from the ALJ's conclusion.  Jones, 760 F.2d

15  at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

16  supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

17  substantial evidence supports the administrative findings, or if there is conflicting evidence

18  supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive,

19  Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

20  improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d

21  1335, 1338 (9th Cir. 1988).

22             In determining whether or not a claimant is disabled, the ALJ should apply the

23  five-step sequential evaluation process established under Title 20 of the Code of Federal

24  Regulations, Sections 404.1520 and 416.920.  Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

25  The five-step process has been summarized as follows:

26  /////

                                        3

Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff argues that the ALJ committed the following four principal errors in finding her not to be disabled: (1) the ALJ improperly found her mental impairment to be non-severe without a legitimate basis for so doing so; (2) the ALJ improperly rejected the opinion of plaintiff's treating physician without a legitimate basis for so doing; (3) the ALJ improperly rejected plaintiff's own testimony regarding her subjective complaints without a convincing reason for so doing; and (4) the ALJ erred in suggesting a material contributing factor.  The court addresses plaintiff's argument below.

## I.    Step Two: Determination of Severe Impairments

Plaintiff's first argument is a challenge to determinations made by the ALJ at step two of the sequential evaluation process.  At this step, the ALJ must determine if the claimant

4

1  has a medically severe impairment or combination of impairments.  Smolen v. Chater, 80 F.3d

2  1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41).  The Commissioner's

3  regulations provide that "[a]n impairment or combination of impairments is not severe if it does

4  not significantly limit [the claimant's] physical or mental ability to do basic work activities."  20

5  C.F.R. §§ 404.1521(a) & 416.921(a).  Basic work activities are "the abilities and aptitudes

6  necessary to do most jobs," and those abilities and aptitudes include (1) physical functions such

7  as walking, standing, sitting, lifting, and carrying, (2) capacities for seeing, hearing, and

8  speaking, (3) understanding, carrying out, and remembering simple instructions, (4) use of

9  judgment, (5) responding appropriately to supervision, co-workers, and usual work situations,

10  and (6) dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521(b) & 416.921(b).

11         The Supreme Court has recognized that the Commissioner's "severity regulation

12  increases the efficiency and reliability of the evaluation process by identifying at an early stage

13  those claimants whose medical impairments are so slight that it is unlikely they would be found

14  to be disabled even if their age, education, and experience were taken into account."  Yuckert,

15  482 U.S. at 153.  However, the regulation must not be used to prematurely disqualify a claimant.

16  Id. at 158 (O'Connor, J., concurring).  To prevent the premature disqualification of claimants,

17  "[a]n impairment or combination of impairments may be found 'not severe *only if* the evidence

18  establishes a slight abnormality that has no more than a minimal effect on an individual's ability

19  to work.'"  Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Smolen, 80 F.3d at

20  1290, and adding emphasis).  "If such a finding is not clearly established by medical evidence,

21  however, adjudication must continue through the sequential evaluation process."  Social Security

22  Ruling (SSR) 85-28, 1985 WL 56856, at *3.  "Step two, then, is 'a de minimis screening device

23  [used] to dispose of groundless claims[.]'"  Webb, 433 F.3d at 687 (quoting Smolen, 80 F.3d at

24  1290).  See also Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001); Tomasek v.

25  Astrue, No. C-06-07805 JCS, 2008 WL 361129, at *13 (N.D. Cal. Feb. 11, 2008) (describing

26  claimant's burden at step two as "low").

5

1      Here, the ALJ did not find plaintiff's mental impairment to be a serve impairment.

2  (Tr. at 17.)  The court has reviewed the record and finds that the ALJ's determination on this

3  issue was in error and warrants remand.  In this regard, the court notes that plaintiff's history of

4  suffering from a mental impairment and receiving treatment for that condition is lengthy.  What

5  follows below is a reflection of only some of the records implicating the severity of plaintiff's

6  mental impairment.

7      On February 22, 1999, plaintiff was involuntarily admitted due to suicidal ideation

8  and depression.  (Tr. at 311-313.)  At that time, plaintiff already had a long and documented

9  history of depression and had been treated with Prozac and Xanax.  (Tr. at 311-12.)  During this

10  time, plaintiff continued to be treated with medication.  (Tr. at 353-56.)

11      In March of 2004, plaintiff was evaluated pursuant to an involuntary psychiatric

12  hold for "5150" status because it was reported that she was indicating that she wanted to "walk

13  into traffic."  (Tr. at 291.)  In 2005, plaintiff began receiving treatment from the El Hogar,

14  Regional Support Team of the Sacramento County Mental Health Division ("El Hogar").  (Tr. at

15  217.)  Plaintiff's treatment included regular medication monitoring and adjustment.  (Tr. at 413-

16  16.)

17      In May of 2005, plaintiff was diagnosed by Dr. Robert Franklin with Bipolar I

18  Disorder, and assessed a GAF of 47.[1]  (Tr. at 412.)  She was prescribed Depakote, Wellburtin and

19  Trazodone.  (Tr. at 412.)  Plaintiff continued to receive regular treatment at El Hogar.  At a visit

20  on February 21, 2007, it was noted that plaintiff had a history of "manic episodes," that she

21  "enjoys the manic episodes and hates the lows" and that she presented as a "[s]lightly euphoric

22

23      [1] A GAF score represents a present rating of overall psychological functioning on a scale
of 0 to 100.  See DIAGNOSTIC AND STATISTICAL MANUAL OF DISORDERS, at 34 (Am. Psychiatric
Ass'n, 4th Ed.2000) ("DSM-IV").  See also Keyser v. Commissioner Social Sec. Admin., 648
24  F.3d 721, 723 (9th Cir. 2011).  ("A GAF score is a rough estimate of an individual's
psychological, social, and occupational functioning used to reflect the individual's need for
25  treatment.").  A GAF score in the range of 41 to 50 denotes: "Serious symptoms (e.g., suicidal
ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social,
26  occupational, or school functioning (e.g., no friends, unable to keep a job)."  DSM-IV at 34.

1  woman who has some pressure of speech." (Tr. at 403.)

2          On September 4, 2007, plaintiff met with Dr. Muniyapla Rajappa at El Hogar.

3  (Tr. at 397.)  Dr. Rajappa, noted plaintiff's diagnosis as "Bipolar Disorder, Type I, Mixed,

4  Without Psychotic Features," and that plaintiff had a GAF of 50.  (Tr. at 397.)  At an October 10,

5  2007, mental health treatment appointment plaintiff began crying and complained that she was

6  "too tearful to go to work and has a hard time even leaving her house." (Tr. at 400.)  Plaintiff

7  further complained that she "becomes anxious about going to work" and "extremely anxious

8  when she has to drive" to visit her daughter.  (Tr. at 400.)  Plaintiff admitted to having "running

9  thoughts." (Tr. at 400.)  Plaintiff also complained that her mood swings and depression had

10 worsened.  (Tr. at 400.)

11         At a November 16, 2007, appointment with Dr. Rajappa plaintiff complained that

12 she had been "feeling more depressed lately and also feeling tired and lethargy with lack of

13 energy and motivation, and some physical somatic pain." (Tr. at 399.)  A March, 17, 2008,

14 Client Data Sheet completed by Dr. Rajappa indicated that plaintiff suffered from "Bipolar

15 Affective Disorder, mixed severe" and that plaintiff's current GAF was 50.  (Tr. at 217.)

16         On October 22, 2008, a doctor at El Hogar met with plaintiff and completed an

17 Annual Medication Service Plan, which noted that plaintiff was bipolar, suffered from manias,

18 "racing thoughts" and depression, was being treated with Xanax, Trazadone, Wellbutrin XL,

19 Depakote and Topomax, and that plaintiff had a GAF of 50.[2]  (Tr. at 226-27.)

20         On April 27, 2009, plaintiff and Amy Pataria, MHA III, completed an "Adult

21 R&R Supplemental Goal Sheet," which indicated that plaintiff's "Treatment Goal #1" was to

22 "[d]ecrease feelings of panic from 7x per day to 4x per day for 12 mos." (Tr. at 124.)  On

23 September 25, 2009, a doctor with El Hogar, met with plaintiff and completed an Annual

24 Medication Service Plan, which noted that plaintiff was bipolar, suffered from manias, "racey

25

26         [2]  The doctor's signature on the plan form is not legible, though it appears it may be that
    of Dr. Franklin.

1  thoughts" and depression and had a GAF of 50.  (Tr. at 134-35.)  An October 8, 2009, Client

2  Data Sheet completed by Dr. Franklin indicated that plaintiff suffered from "Bipolar, mixed" and

3  that plaintiff's current GAF was 50.  (Tr. at 123.)

4          In addition to the medical records summarized above, plaintiff also testified at the

5  January 11, 2010 administrative hearing about the severity of her mental impairment.[3]

6  According to plaintiff, her condition causes her to be anxious about noises and driving, to the

7  degree that she can only work very close to her home, to have poor memory and to be easily

8  distracted.  (Tr. at 443-47.)

9          Although the ALJ did not find plaintiff's mental impairment to be a serve

10  impairment, his decision did discuss plaintiff's medical records as they pertain to her alleged

11  mental impairment, stating, in part:

12          In May 2008, a psychiatric CE performed by Dr. Timothy Canty
            indicated that Ms. Colbert reported that she had an elaborate
13          system for keeping herself emotionally stable.  She visits with a
            psychiatrist ever (sic) four months, takes her psychiatric
14          medication, works part time, walks five days a week for relaxation,
            socialized with family and church friends, enjoys watching
15          television, and was doing well.  Her MSE was normal.  She was
            diagnosed with alcohol dependence in remission per claimant and
16          personality disorder NOS.  GAF was rated at 75.  The doctor
            indicated that her symptoms pointed towards characterological
17          issues in the context of past substance abuse.  The doctor also
            noted that she seemed quite sincere in her sobriety and was
18          functioning quite well.  Functionally, the doctor indicated that she
            could interact effectively with coworkers and the public, was
19          currently working and doing well (Exhibits 152F-155F.)

20                                          ***

21          In August 2008, the SA determined that mentally Ms. Colbert's
            impairments were not severe (Exhibits 156F-182F).
22
                                            ***
23
_____

24          [3]  In a highly unusual exchange during the administrative hearing, at one point during her
     testimony plaintiff began crying after discussing the death of her father and her pet rabbit, leading
25   the ALJ to instruct plaintiff "[d]on't get all misty at me," and to inform plaintiff that the ALJ's
     "view of people who cry are just feeling sorry for themselves" and that her crying was "not
26   impressing [him]."  (Tr. at 427-29.)

1    In January 2009, the SA determined that mentally Ms. Colbert
     could perform detailed and complex tasks, had the ability to
2    interact with co-workers, supervisors, and the public, if sober could
     respond appropriately to work changes, and could not work around
3    hazards if drugs and alcohol was active (Exhibits 224F-251F).

4    (Tr. at 20-22.)  With respect to these opinions, the ALJ afforded "great weight to the SA

5    determinations and CE's medical opinions . . ."  (Tr. at 24.)

6           The weight to be given to medical opinions in Social Security disability cases

7    depends in part on whether the opinions are proffered by treating, examining, or nonexamining

8    health professionals.  Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

9    "As a general rule, more weight should be given to the opinion of a treating source than to the

10   opinion of doctors who do not treat the claimant . . . ."  Lester, 81 F.3d at 830.  This is so because

11   a treating doctor is employed to cure and has a greater opportunity to know and observe the

12   patient as an individual.  Smolen v. Chater, 80 F.3d at 1273, 1285 (9th Cir. 1996); Bates v.

13   Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

14          A treating physician's uncontradicted opinion may be rejected only for clear and

15   convincing reasons, while a treating physician's opinion that is controverted by another doctor

16   may be rejected only for specific and legitimate reasons supported by substantial evidence in the

17   record.  Lester, 81 F.3d at 830-31.  The ALJ, however, need not give weight to a treating

18   physician's conclusory opinion supported by minimal clinical findings.  Meanel v. Apfel, 172

19   F.3d 1111, 1113-14 (9th Cir. 1999) (affirming rejection of a treating physician's "meager

20   opinion" as conclusory, unsubstantiated by relevant medical documentation, and providing no

21   basis for finding the claimant disabled); see also Magallanes v. Bowen, 881 F.2d 747, 751 (9th

22   Cir. 1989).

23          "The opinion of an examining physician is, in turn, entitled to greater weight than

24   the opinion of a nonexamining physician."  Lester, 81 F.3d at 830.  An examining physician's

25   uncontradicted opinion, like a treating physician's, may be rejected only for clear and convincing

26   reasons, and when an examining physician's opinion is controverted by another doctor's opinion,

9

1    the examining physician's opinion may be rejected only for specific and legitimate reasons

2    supported by substantial evidence in the record.  Id. at 830-31.  Finally, "[t]he opinion of a

3    nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection

4    of the opinion of either an examining physician *or* a treating physician."  Id. at 831 (emphasis in

5    original).

6            Here, with respect to the May 2008 consultative examination by Dr. Timothy

7    Canty relied upon by the ALJ, the court notes that Dr. Canty concluded that although plaintiff

8    had been diagnosed as suffering from bipolar disorder, "her symptoms point toward

9    characterological issues in the context of past substance abuse." (Tr. at 263.)  Dr. Canty's

10   conclusion with respect to plaintiff's bipolar disorder diagnosis, however, and his conclusion that

11   plaintiff's GAF in May of 2008 was 75, conflicted with the conclusions of the mental health care

12   providers who treated plaintiff at El Hogar from 2005 through 2009, specifically Dr. Rajappa and

13   Dr. Franklin, who diagnosed plaintiff as suffering from Bipolar Affective Disorder with a GAF

14   of 50.  Moreover, the court notes that Dr. Canty formed his opinion despite the fact that he

15   admittedly "did not have [plaintiff's] psychiatric records." (Tr. at 263.)

16           With respect to the August 2008 and January 2009 reports issued by the State

17   Agency doctors, the court notes that neither of the State Agency doctors examined plaintiff prior

18   to reaching their conclusions.  Moreover, while the August 2008 report found plaintiff's mental

19   impairment was not severe, the January 2009 report found that plaintiff suffered from "Organic

20   Mental Disorders" and "Affective Disorders," which caused a mild degree of limitation with

21   respect to plaintiff's restriction of activities of daily living, difficulties in maintaining social

22   functioning and difficulties in maintaining concentration, persistence, or pace, and that plaintiff

23   was moderately limited in her ability to complete a normal workday and workweek without

24   interruptions from psychologically based symptoms and to perform at a consistent pace without

25   an unreasonable number and length of rest periods. (Tr. at 171-86, 249.)

26   /////

1      Given this record, the court finds that in rejecting the opinions of plaintiff's

2   treating physicians the ALJ failed to state specific and legitimate reasons supported by substantial

3   evidence in the record as was required.  Moreover, the court finds that in light of plaintiff's

4   medical records documenting her ongoing mental health treatment, her history of being

5   prescribed medication to treat her mental impairment, the opinions of her treating physicians and

6   her own testimony, there is extensive evidence that plaintiff suffers from a mental impairment

7   that significantly limits her ability to do basic work activities.  Accordingly, the ALJ erred in

8   finding that plaintiff's mental impairment was not a severe impairment.  See  Cowains v. Astrue,

9   No. CV 12-2178-MLG, 2012 WL 3779076, at *2-3  (C.D. Cal. Aug. 30, 2012) ("Plaintiff's

10   medical records documenting her ongoing mental health treatment as well as her history of

11   prescription medication used to treat mental health disorders indicates a level of impairment that

12   at least meets the 'de minimis' requirement at this stage of the inquiry.").

13      In reaching this conclusion, and as noted above, the court is particularly mindful

14   that the step-two inquiry is but "a de minimis screening device to dispose of groundless claims."

15   Smolen, 80 F.3d at 1290 (citing Yuckert, 482 U.S. at 153-54).  See also Edlund, 253 F.3d at

16   1158.  The court cannot find that plaintiff's mental impairment is "not severe" because the

17   evidence of record does not establish that her impairment is merely a slight abnormality having

18   no more than a minimal effect on her ability to work.  Certainly, this is not an instance in which a

19   finding of no impairment at step two of the sequential evaluation process was justified by a total

20   absence of objective evidence of a severe impairment or where even a claimant's own doctor was

21   hesitant to conclude that the condition in question was legitimate.  See Webb, 433 F.3d at 688.

22      Here, the ALJ's determination with respect to plaintiff's mental impairment is

23   unsupported by substantial evidence in the record as a whole.  Moreover, because the ALJ

24   improperly rejected the opinions of plaintiff's treating physicians, the improper assessment of the

25   medical evidence affected the ALJ's determination of plaintiff's residual functional capacity.

26   Accordingly, the error was not harmless.  See Bauer v. Astrue, No. CV 11-8805-SP, 2012 WL

1    3999761, at *5 (C.D. Cal. Sept. 11, 2012).

2          "[A]djudication must continue through the sequential evaluation process."  SSR

3    85-28, 1985 WL 56856, at *3.  Remand is therefore required in this case so that the ALJ can

4    proceed beyond step two of the sequential evaluation process with respect to plaintiff's severe

5    impairments.  See Webb, 433 F.3d at 688 (remanding for further proceedings where "[t]he ALJ

6    should have continued the sequential analysis beyond step two because there was not substantial

7    evidence to show that Webb's claim was 'groundless'").

8                                     **CONCLUSION**

9          In light of the remand required by the ALJ's error at step two, the court need not

10   address plaintiff's remaining argument.[4]  See Sanchez v. Apfel, 85 F. Supp.2d 986, 993 n.10

11   (C.D. Cal. 2000) ("Having concluded that a remand is appropriate because the ALJ erred in

12   ending the sequential evaluation at Step Two, this Court need not consider the issue of plaintiff's

13   credibility.").  Moreover, the record is not sufficiently developed for consideration of those

14   arguments in this case at the present time.  Cf. Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th

15   Cir. 1994) ("Generally, we direct the award of benefits in cases where no useful purpose would

16   be served by further administrative proceedings, or where the record has been thoroughly

17   developed.").

18         On remand, the ALJ shall recognize plaintiff's mental impairment as severe at

19   step two of the sequential evaluation process and proceed with the sequential analysis.  The effect

20   of plaintiff's impairment shall be carefully considered in conjunction with her physical

21   impairments.  The medical opinions shall be given proper weight, and the subjective testimony of

22   plaintiff shall be considered in keeping with the applicable legal standards.  Plaintiff's residual

23   functional capacity shall be reconsidered in light of all of plaintiff's impairments and the entire

24   record.  If the sequential evaluation proceeds to step five, the ALJ shall hold a new hearing at

25

26         [4]  The court notes that counsel for plaintiff argues that in this case "all error flows from
     the refusal to recognize mental impairment, obviously the real problem."  (Doc. No. 19 at 5.)

1   which plaintiff testifies and proper hypothetical questions are presented to a vocational expert in

2   a manner that takes into account all of the limitations on plaintiff's ability to engage in

3   work-related functions.  See Holohan v. Massanari, 246 F.3d 1195, 1208-09 (9th Cir. 2001)

4   (explaining that testimony from a vocational expert was necessary because the claimant suffered

5   from a severe mental impairment).

6           Accordingly, IT IS HEREBY ORDERED that:

7           1.  Plaintiff's November 15, 2011 motion for summary judgment (Doc. No. 19) is

8   granted;

9           2.  Defendant's February 24, 2012 cross-motion for summary judgment (Doc. No.

10   24) is denied;

11           3.  The decision of the Commissioner of Social Security is reversed; and

12           4.  This case is remanded for further proceedings consistent with this order.

13   DATED: September 18, 2012.

14

15                                    _Dale A. Drozd_

16                                    DALE A. DROZD
                                     UNITED STATES MAGISTRATE JUDGE

17

18

19   DAD:6
     Ddad1/orders.soc sec/colbert0199.order

20

21

22

23

24

25

26